IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA      )
                              )
      v.                      )    CRIMINAL ACTION NO.
                              )     2:08cr52-MHT
ANDREW O'NEAL LOWERY          )        (WO)

<u>OPINION AND ORDER</u>

The Armed Career Criminal Act (ACCA) requires courts
to impose a minimum sentence of 15 years in prison for
any person possessing a firearm who has three previous
convictions for a "violent felony" or "serious drug
offense."  18 U.S.C. § 924(e).  Because of the many
defendants sentenced under this lengthy, mandatory
provision and because of the surprisingly broad reach
given to the ACCA by some courts, significant scrutiny
has been given recently to the interpretation of the term
"violent felony."

The Supreme Court has, in recent terms, decided three
cases interpreting the provision:  <u>Chambers v. United
States</u>, 129 S.Ct. 687 (2009); <u>Begay v. United States</u>, 128

S.Ct. 1581 (2008); and <u>James v. United States</u>, 550 U.S. 192 (2007).   In the wake of the Supreme Court's intervention, the Eleventh Circuit Court of Appeals has recognized that its previous approach to defining "violent felony" has been replaced by the test outlined in <u>Begay</u>.  <u>United States v. Archer</u>, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[W]here the Supreme Court has clearly set forth a new standard to evaluate which crimes constitute "violent felonies" ... our prior panel precedent ... has been undermined to the point of abrogation.").  More recently, the Eleventh Circuit has culled from the Supreme Court's new decisions a freshly minted three-step approach for determining if a prior conviction qualifies as a predicate "violent felony" for the purposes of the ACCA.  <u>United States v. Harrison</u>, --- F.3d ----, 2009 WL 395237 (11th Cir. 2009).

It is within this context that the court must determine whether defendant Andrew O'Neal Lowery's prior conviction for escape, 3rd degree, pursuant to 1975 Ala.

2

Code § 13A-10-33, is a "violent felony" within the
meaning of the ACCA.  The court holds that it is not.


I. BACKGROUND

On the evening of December 13, 2007, Lowery had
consumed two small bottles of wine and was shooting a gun
at squirrels behind a house in a trailer park in
Greenville, Alabama.  Police arrested him for public
intoxication.  Lowery was later indicted for being a
felon in possession of a firearm in violation of 18
U.S.C. § 922(g).  Lowery admitted to possessing the
firearm and pled guilty.

The government now seeks to classify three of
Lowery's prior convictions--state convictions for assault
(2nd degree), robbery (3rd degree), and escape (3rd
degree)--as "violent felonies."  That classification
would require this court, under the ACCA, to sentence
Lowery to at least 15 years in prison.  The only dispute
concerns the conviction under Alabama law for escape, 3rd

degree.  Lowery admits that the other convictions qualify
as ACCA predicates.


## II. DISCUSSION

The  relevant  portion  of  the  ACCA  defines  "violent
felony" as a felony that:

> "(i) has an element the use, attempted
> use, or threatened use of physical force
> against the person of another; or
>
> "(ii) is burglary, arson, or extortion,
> involves  the  use  of  explosives,  <u>or
> otherwise involves conduct that presents
> a  serious  potential  risk  of  physical
> injury to another</u>...."

18 U.S.C. § 924(e)(2)(B) (emphasis added).  No party has
suggested that the crime of escape, 3rd degree, involves
the  use  of  physical  force  (as  required  by  subsection
(i)).  Similarly,  escape,  3rd  degree,  is  not  one  of  the
enumerated  crimes  listed  in  subsection  (ii).  Thus,  the
question here is whether the federal statute, through the
portion  highlighted  above  (that  is,  the  provision's

residual clause), possesses such reach as to include § 13A-10-33 of the 1975 Ala. Code.

As indicated above, the Eleventh Circuit has now established a three-step inquiry for determining whether a crime falls under the ACCA's residual clause: "First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed? Second, does that crime pose a 'serious potential risk of physical injury' that is similar in degree to the risks posed by the enumerated crimes?  Third, is that crime similar in kind to the enumerated crimes?" Harrison, --- F.3d at ----, 2009 WL 395237, at *5.

The first step requires that the court examine the elements of the predicate offense at issue in order to understand how it is committed in the generic sense. Harrison, --- F.3d at ----, 2009 WL 395237, at *3.  This approach is dictated by the maxim that courts "look only to the fact of conviction and the statutory definition of the prior offense."  Taylor v. United States, 495 U.S.

5

575, 602 (1990).  Thus, the term "violent felony" is a term of art, and it is best understood not as having any colloquial meaning, but rather, as carving out <u>technical categories</u> of crimes.

If this "categorical" approach yields ambiguous results--that is, if the fact of conviction and the statutory elements are insufficient to settle the question one way or the other--the court would then be permitted to examine certain limited sources (for example, a state-court charging document or plea colloquy) to determine the underlying facts of a conviction as necessarily proven to the state court. <u>Shepard v. United States</u>, 544 U.S. 13, 19-26 (2005); <u>United States v. Llanos-Agostadero</u>, 486 F.3d 1194, 1197 (11th Cir. 2007).  The prior felony could still be a "violent felony" if these other dispositive evidentiary sources showed that the conviction "necessarily rested" on the facts that identify the felony to be violent. <u>Shepard</u>, 544 U.S. at 21.  Thus, three possibilities

6

exist: first, § 13A-10-33 could be one in which the elements criminalize conduct that necessarily satisfies the ACCA's residual clause, making the statute eligible as a "violent felony"; second, the statute could be one in which the elements themselves do not constitute conduct that satisfies the residual clause, making the statute, as a category of conduct, ineligible to be a "violent felony"; or, third, the statute could require, depending on the case, elements which would establish a "violent felony" or elements which would not, thus necessitating a further inquiry into the conduct with which the defendant was actually charged and necessarily convicted.[1]

---

1.    For example, if a state statute criminalized "burglary," but defined "burglary" to include breaking into a car or a building, a court would not be able to determine from the fact of conviction if the crime was a "violent felony" because the ACCA's definition of "burglary" captures only breaking into a building.  In such a case, the court would be permitted to look to certain limited sources to see if the state court necessarily found the elements that would make the crime fall within the scope of the ACCA.  See generally Shepard, 544 U.S. at 26.

The Alabama statute for 3rd degree escape, far from being a lengthy tome, quite simply criminalizes "escapes or attempts to escape from custody." 1975 Ala. Code § 13A-10-33.[2] In contrast, § 13A-10-31 (escape, 1st degree) captures escape when a person "employs physical force, a threat of physical force, a deadly weapon or a dangerous instrument in escaping or attempting to escape from custody" or, "[h]aving been convicted of a felony, ... escapes or attempts to escape from custody imposed pursuant to that conviction." Section 13A-10-32 (escape, 2nd degree) captures those escapes in which a person "escapes or attempts to from a penal facility." Given this statutory scheme, the Commentary to § 13A-10-33 (3rd degree) provides that the statute applies when "the escapee (a) employed no physical force, (b) had not been convicted of a felony, and (c) escaped from a detention other than a penal facility." Thus, the statute pursuant to which Lowery was convicted is a lesser-included

_____

2. Neither party offers any analysis of the elements of this offense.

offense to the more-serious escape crimes described by Alabama law because it consists (entirely) of "the one act" (escape from custody) that is required by all three. Long v. State, 675 So.2d 532, 534 (Ala. Cr. App. 1996).

As a preliminary matter, precedent makes clear that § 13A-10-33 includes at least some conduct that does not qualify as a "violent felony." The statutory framework takes an expansive view of escape from "custody." For example, the statute includes fleeing from a police officer once an assertion of intent to arrest is combined with an initial act indicating arrest or submission. Hunter v. State, 867 So.2d 361 (Ala. Cr. App. 2003). Escape from "custody" under Alabama law also includes failing to report back to a work-release center or failing to show up to a scheduled meeting with a supervising-correctional officer. E.g., Ex Parte Jones, 530 So.2d 877 (Ala. 1988); Alexander v. State, 475 So. 2d 625 (Ala. Cr. App. 1984); State v. Wright, 976 So.2d 1053, 1054-55 (Ala. Cr. App. 2007); cf. 1975 Ala. Code

9

§ 15-18-175(d)(3)(e) (establishing that failing to observe certain conditions in a community-corrections program shall be considered "escape").

It is clear, then, that the statute includes conduct similar (if not identical) to the "failure to report" held in Chambers not to be a violent felony. At a minimum, § 13A-10-33 clearly criminalizes forms of "inaction" (like failing to appear at a designated place), which Chambers recognized were a "far cry" from the kind of "purposeful, violent, and aggressive" behavior otherwise required by the ACCA. Chambers, 129 S.Ct. at 692. In Chambers, the defendant failed to report to serve weekend confinement on several occasions and was convicted of a state offense for those failures. That offense--the failure to report for imprisonment-- could not, in the opinion of the Supreme Court, qualify as a "violent felony." Alabama courts have routinely upheld convictions for similar conduct under § 13A-10-33. E.g., Conner v. State, 840 So.2d 950 (Ala. Cr. App. 2002)

10

(upholding conviction for escape, 3rd degree, when defendant left his place of employment and failed to return to the county jail as part of a work-release program). Thus, because a defendant can be convicted under § 13A-10-33 without engaging in conduct encompassed by the ACCA's residual clause, that is by failing to report to a particular place at a particular time, the court cannot conclude from the fact of Lowery's conviction that he committed a "violent felony."

However, because the statute also includes conduct other than failing to appear at a designated place at a given time, the court must address--employing the Supreme Court and Eleventh Circuit's new approach--whether § 13A-10-33's statutory elements necessarily criminalize some conduct that (1) poses serious potential risk of physical injury to another and (2) is similar in nature to the ACCA's enumerated offenses. See Begay, 128 S.Ct. at 1585; Harrison, --- F.3d at ----, 2009 WL 395237, at *4-5.

The first of these two questions--the degree of risk posed--has proven conceptually difficult for judges.  In addition to the qualitative issue of defining how much and what kind of risk is a "serious potential risk of physical injury," 18 U.S.C. § 924(e)(2)(B)(ii), judges face a difficult quantitative question concerning how to measure whether the risk surpasses that threshold without relying merely on heavily personal guesswork.  <u>See Harrison</u>, --- F.3d at ----, 2009 WL 395237, at *12 ("[C]ourts, without empirical evidence, are left to rely on their own intuition about whether certain kinds of behavior pose serious potential risks of physical injury.").

In <u>Harrison</u>, the Eleventh Circuit analyzed whether willfully fleeing from police by refusing to stop after a police car engaged its sirens posed the required level of risk.  The court found that it did not.  While "willfully fleeing a police officer in a motor vehicle" is a "confrontational" and "disobedient" act, it did not

meet the required threshold of serious risk.  <u>Harrison</u>,
--- F.3d at ----, 2009 WL 395237, at *11.  Similarly,
here, the simple act of escaping from custody (that is,
when "the escapee (a) employed no physical force, (b) had
not been convicted of a felony, and (c) escaped from a
detention other than a penal facility," Commentary, 1975
Ala. Code § 13A-10-33, and not even, as in <u>Harrison</u>, when
the escape is by vehicle), does not itself involve any
use of force or violence to make it likely that the
confrontation "will escalate" into violence.  <u>Id</u>.
Without more, the disobedient act of fleeing from custody
"does not show that the offender is significantly more
likely than others to attack" another person.  <u>Id</u>.
(quoting <u>Chambers</u>, 129 S.Ct. at 692).

The court in <u>Harrison</u> wrote: "The argument that
willfully eluding an officer, at any speed, is a form of
escape, does not impact our analysis. <u>Chambers</u> rejects
the notion that all escapes are created equal. And,
likewise, we reject the notion that all willful fleeing

13

crimes should be treated equally, especially where the Florida statute differentiates between types of willful fleeing." --- F.3d at ----, 2009 WL 395237, at *11. Here, the court agrees that not all escapes should be treated equally, especially where, as in <u>Harrison</u>, the state statutes differentiate between types of escape.

It is therefore important to remember that, consistent with the categorical approach, the <u>only</u> conduct at issue here is the simple act of escape from custody. The question is whether escape, 3rd degree, is a violent felony, not whether every person convicted of that crime must have behaved in a nonviolent way while committing it. Indeed, it is obviously possible to satisfy the elements of escape, 3rd degree--thereby committing the crime--<u>while also engaging</u> in conduct that can be considered violent. Just like in <u>Harrison</u>, an offender could willfully flee by failing to stop for a police car in a much more reckless and violent way. But as <u>Harrison</u> explicitly noted, --- F.3d at ----, 2009 WL

14

395237, at *10, Florida had not decided to make such additional behavior <u>an element of the offense</u>, and therefore, that state statute could not qualify as a violent felony because the facts constituting that putative violence would not have been required to have been found in order to sustain a conviction.  Or, by way of another example, recalling the factual circumstances surrounding <u>Begay</u> and <u>Chambers</u>, it is possible to satisfy the elements of drunk driving while also engaging in intentional, violent behavior, and it is possible to commit violent acts while failing to report.  In neither case does that possibility convert the crimes of drunk driving or failing to report, as defined by their elements, into "violent felonies."[3]

Perhaps equally important for present purposes, <u>Harrison</u> makes clear that "the government bears the

---

3.  In such cases, the more violent behavior will almost always itself be a <u>separate crime</u> defined by its own separate elements.  In some cases, as with escape 3rd degree, the nonviolent, catch-all offense is a lesser included offense to those offenses that require the use of force or violence as an element.

burden to show that [the state-law offense] poses 'a serious potential risk of physical injury to another,'" --- F.3d at ----, 2009 WL 395237, at *12, and that empirical data should be used to the extent possible in helping the court make this conceptually difficult risk assessment.  Here, the government has not provided any argument concerning the potential risks of physical injury associated with the conduct captured by § 13A-10-33, much less provided any facts or empirical evidence to support such an argument.  <u>Harrison</u> does not require statistical evidence, but it noted that such evidence can be crucial, particularly when the predicate crime's link to physical risk is not obvious, as it is for crimes like "robbery, rape, and arson." <u>Id</u>.  In "lesser crimes" like escape, the court "would benefit from empirical evidence of the likelihood of physical injury" when statutory escape crimes are committed but "do not have the elements" that include more obvious factors associated with such a risk (like force or violence).  <u>Id</u>.  The

16

importance of empirical evidence emphasized in <u>Harrison</u>
makes a lot of sense, particularly considering that
extraordinarily lengthy prison terms are at stake and
given Congress's desire to isolate only those offenders
whose prior violent conduct makes them a special, serious
risk toward new victims.

While <u>Harrison</u> emphasizes the importance of empirical
evidence, because the Supreme Court has repeatedly turned
to statistics in cases of this ilk, the cases rightly
suggest a skepticism about painting with statistical
brushes in strokes that are too broad.  For example, if
the government here had offered any evidence similar to
what it offered in <u>Chambers</u>, it is not clear that such
empirical data would be sufficient to show that a
violation of § 13A-10-33 poses a serious risk of physical
injury.  A plausible reading of the ACCA would be that
the <u>conduct itself</u> would have to cause that substantial
risk, not merely actions done at some later time by the
offender or actions in response to the offender's

behavior that may be highly attenuated and occur only in the future.   After all, it is the felony itself--the elements of the underlying crime--that has to be "violent."   The Supreme Court reserved that question in Chambers, finding that, "even if we assume for argument's sake the relevance of violence that may occur long after an offender fails to report," the statistical evidence simply did not back up the claim that the state crime was linked to a serious risk of physical injury.   129 S.Ct., at 692.   The Supreme Court's reservation in Chambers reflects an understandable hesitation in casting the nets of potential harm too wide.   Indeed, almost any criminal activity that brings citizens and police into contact could result in serious risks of physical harm; Congress meant to include only a limited range of crimes that were themselves violent.

Even if, contrary to the court's findings above, a serious potential risk of physical injury exists when § 13A-10-33 is violated, the second step of the new

18

inquiry requires that the statute must also be similar in kind to the enumerated offenses.  <u>Begay</u> noted that, because Congress did not mean to include "<u>all</u> crimes that present a serious potential risk of physical injury," 128 S.Ct. at 1585, the ACCA's residual clause includes only crimes "roughly similar [to the enumerated offenses], in kind as well as in degree of risk posed."  <u>Harrison</u>, --- F.3d at ----, 2009 WL 395237, at *5.  <u>Begay</u> then identified "at least one" shared aspect of the enumerated crimes: they are all "purposeful, violent, and aggressive."  128 S.Ct. at 1586.  In order to qualify, a statute must, at a minimum, include conduct that shares these three features.  <u>Harrison</u>, --- F.3d at ----, 2009 WL 395237, at *12.

Escape, 3rd degree, surely includes conduct that is purposeful but, like in <u>Harrison</u>, it does not necessarily include conduct that is violent and aggressive as those terms were used in <u>Begay</u>.  In <u>Begay</u>, the Supreme Court described the shared features of the listed offenses:

"That conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." Begay, 128 S.Ct. at 1586. The fact that an offender has committed such a purposeful, violent, and aggressive crime in the past makes that offender, in the judgment of Congress, significantly more dangerous. Thus, the Supreme Court requires, at a minimum, that the prior felony be "purposeful, violent, and aggressive" because Congress has used those characteristics as a proxy for determining which felons are most likely to later use a firearm to harm a victim.

Compared, for example, to prior crimes of violence, mere escape as used in § 13A-10-33 (that is, when "the escapee (a) employed no physical force, (b) had not been convicted of a felony, and (c) escaped from a detention other than a penal facility," Commentary, 1975 Ala. Code § 13A-10-33) does not seem like the kind of crime that indicates anything about the perpetrator's likelihood of

later using a gun to harm a victim.  The elements of
escape, 3rd degree, simply do not involve the kind of
"callousness and indifference to the lives of others"
that indicate the kind of person who would "deliberately
point the gun and pull the trigger."  <u>Harrison</u>, --- F.3d
at ----, 2009 WL 395237, at *12.  Indeed, the elements of
mere escape are nonviolent and do not even necessitate
that there be a victim.  <u>See</u> Commentary, Ala. Code § 13A-
10-33 (noting that the statute applies when "the escapee
... employed no physical force").  The act of escape, as
defined here, does not possess the Congressional proxies
of violence and aggression identified by the Supreme
Court.[4]

_____

    4.  While voluntarily escaping from custody, for
example, by walking away after an arrest, is certainly
voluntary, more active, and more aggressive in some sense
of the word than the failing to report at issue in
<u>Chambers</u>, it is certainly not violent, and it is clearly
not violent and aggressive in the same way as the
enumerated offenses--that is, in a way that suggests an
offender would be an armed career criminal significantly
more likely to harm a victim with a gun.

Just as in <u>Harrison</u>, a person's mere escape, without anything more, suggests an unwillingness to engage in violent conduct. As <u>Harrison</u> noted, a nonviolent and non-reckless fleeing in a car "seems more appropriately characterized as the crime of a fleeing coward--not an armed career criminal bent on inflicting physical injury." --- F.3d at ----, 2009 WL 395237, at *12.[5] Similarly, here, it cannot be concluded that the elements of § 13A-10-33, which involve only a nonviolent, voluntary, and unauthorized unilateral termination of custody, suggest an armed career criminal acting in order to inflict injury. Alabama has another escape statute that includes such conduct among its elements in some circumstances, but that statute is not § 13A-10-33.

---

5. As <u>Harrison</u> intimated, the act of escape or of fleeing law enforcement, particularly when done in a nonviolent and non-reckless way, is, at its very essence, an act that seeks to avoid physical confrontation. Such an action cannot, based on mere judicial conjecture alone, be linked to an increased risk that an offender will use a gun to harm a victim.

22

The court thus holds, after reviewing the statute pursuant to the categorical approach, that, because there are no statutory elements upon which a § 13A-10-33 conviction can rest that necessarily involve the kinds of conduct covered by § 924(e)(2)(B)(ii)'s residual clause, a prior conviction pursuant to § 13A-10-33 is not a "violent felony." However, even if the court were somehow to find otherwise, concluding that the statute described at least one category of conduct that qualified under the ACCA, the government has not produced sufficient information about Lowery's prior offense for the court to determine, consistent with <u>Shepard</u>, that his conduct fell into a category encompassed by the term "violent felony." The government asserts merely that Lowery escaped from the custody of Officer Diane Harris. A review of the evidentiary basis of the Pre-Sentence Report reveals that the state court indictment merely alleged that Lowery "did escape or attempt to escape from the custody of Lt. Diane Harris." This information is

insufficient to show that Lowery necessarily pled to conduct that is considered a serious potential risk of physical harm to another and similar in kind to the enumerated offenses. This is particularly true because, as noted earlier, Alabama takes such an expansive view of the term "custody."

Lowery's escape, 3rd degree, conviction makes him, according to Alabama law, a felon; the conviction does not, however, according to federal law, necessarily make him a violent one.

***

Accordingly, it is ORDERED that defendant Andrew O'Neal Lowery's prior conviction for escape, 3rd degree, pursuant to 1975 Ala. Code § 13A-10-33, is not a "violent felony" within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e).

DONE, this the 3rd day of March, 2009.

       /s/ Myron H. Thompson
       UNITED STATES DISTRICT JUDGE